**FEDERATED MUTUAL INSURANCE COMPANY, Plaintiff-Respondent,**

v.

**MADDEN OIL COMPANY, INC., Defendant-Appellant.**

No. 14915.

Missouri Court of Appeals, Southern District, Division Two.

July 27, 1987.

Nicholas R. Fiorella, Gannaway, Fiorella, Cummings & Bennett, Springfield, for defendant-appellant.

Glenn A. Burkart, Mann, Walter, Burkart, Weathers & Walter, Springfield, for plaintiff-respondent.

FLANIGAN, Judge.

Plaintiff-respondent Federated Mutual Insurance Company, ("Federated"), brought this declaratory judgment action against defendant-appellant Madden Oil Company, Inc., ("Madden"), seeking a determination of whether Federated's "special multi-peril policy," No. SMP017925, issued to Madden as the named insured, covered a loss of $27,500 which Madden incurred. The loss arose out of Madden's dispute with one Campbell with respect to a transport trailer. The trial court, sitting without a jury, declared that the policy did not apply to the loss and found the issues generally in favor of Federated. Madden appeals.

The policy obligated Federated to pay on behalf of the insured "all sums which the insured shall become legally obligated to pay as damages because of property damage to which this insurance applies, caused by an occurrence, and [Federated] shall have the right and duty to defend any suit against the insured seeking damages on account of such property damage." The issue is whether the $27,500 loss constituted "property damage" caused by an "occurrence" as those two terms are respectively defined in the policy.

The policy contains the following definitions:

"'*Property damage*' means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) *loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.*"

"'*Occurrence*' means an *accident,* including continuous or repeated exposure to conditions, which *results in* bodily injury or *property damage neither expected nor intended from the standpoint of the insured.*" (Emphasis added.)

It is the position of Madden that the $27,500 loss was "property damage" caused by an "occurrence" and that the trial court erred in ruling otherwise. It is the position of Federated that the $27,500 loss was not "property damage" caused by an "occurrence" and that the trial court properly found that the policy did not apply to the loss. Federated does not rely on any exclusion and neither side mentions an exclusion.

There is no significant dispute concerning the background facts which are as follows:

(1) The policy period of Policy No. SMP017925 was from June 1, 1979 to June 1, 1980.

(2) On May 1, 1978, one Stomboly executed in favor of one Campbell a security agreement on a 1969 model aluminum transport trailer. Later Stomboly defaulted on the promissory note held by Campbell but failed to retransfer the trailer in accordance with the security agreement.

(3) On June 13, 1979, Stomboly purported to transfer the title to the trailer to Madden. Prior to such purported transfer, Madden knew that Campbell claimed ownership of the trailer and right to its possession under the security agreement and that Campbell had a lawsuit pending against Stomboly to replevy the trailer.

(4) On September 5, 1984, Campbell obtained a judgment against Madden in a replevin action. The judgment awarded Campbell possession of the trailer and $31,000 as damages for Madden's wrongful detention of it from June 13, 1979, to August 31, 1984. The judgment recited, among other things, that Madden, at the time of the "purchase" of the trailer from Stomboly, "was not a bona fide purchaser without notice of said trailer" because Madden negotiated for the purchase of said trailer with actual knowledge of Campbell's claim and security interest and that Campbell "was entitled to priority and possession as to Madden." The judgment also recited that the "reasonable fair market value" of the trailer in 1979 was $9,000 and that, in 1984, it still had that value.

(5) Following the entry of judgment in the replevin action, Madden settled with Campbell for $20,000. Madden spent an additional $7,500 in defending the replevin action.

No issue is raised concerning the reasonableness of the $20,000 settlement or the $7,500 expenses. Neither party claims that those two components should be treated separately for coverage purposes. There is no claim that a portion, but not all, of either component is covered or not covered. The briefs of both parties approach the coverage issue on the theory that either the policy applies to the entire $27,500 loss or it does not apply at all. This court, accordingly, adopts the same approach.

Madden's brief makes the following argument:

"Refusal of [Madden] to subordinate its rights to the transport trailer to that

of Campbell after payment of valuable consideration by [Madden] were clearly intentional acts of [Madden] but do not bar recovery under the policy. For four years [Madden] defended its rights to possession of the trailer, and simply because the judgment [in Campbell's · replevin action against Madden] is adverse does not bar recovery under the liability policy. There is a vast difference between an intended act and intended result. The mere fact that the damages that were assessed against [Madden] in the replevin action might have been foreseeable does not exclude coverage under the occurrence and property damage provisions of the policy....

"The loss of use award in the judgment in the amount of $31,000 is clear (sic) property damage covered by the policy....

"It is the specific intent of the 'property damage' provision of this policy ... to provide for economic recovery for loss of use as an element of property damage, regardless of whether there has been any physical or material destruction of any tangible property. The definition as set forth in the policy is clearly of a two-fold nature and does provide for loss of use of tangible property as recoverable property damage. According to the judgment against [Madden] it is clearly found that there was no destruction or damage to the property, however it did specifically award a judgment for loss of use of the property during the time that [Madden] exercised control over the property....

"A plain and ordinary reading of the language of these provisions ['occurrence' and 'property damage'] of the policy clearly establishes that the loss of use damages as assessed by the Circuit Court in the replevin action were recoverable under the policy. The trial court thus should have awarded [Madden] under the policy the $20,000 paid in settlement of the judgment pertaining to the loss of use, as well as all attorney's fees and court costs expended by [Madden] in defense of the replevin action."

The trial court found, and this court agrees, that from the standpoint of Madden, Campbell's loss of use of the trailer was not caused by an "occurrence." The trial court found, and this court agrees, that Campbell's loss of use "was planned and expected" by Madden.

The policy definition of "occurrence," as pertinent here, requires these elements: (1) an accident; (2) resultant property damage which is neither expected nor intended by Madden.

Madden's brief does not state specifically what it was which Madden claims constituted "an accident." Apparently it was the outcome of the lawsuit by Campbell against Madden which, so Madden claims, was "neither expected nor intended" from Madden's standpoint, yet Madden's brief concedes that the damages assessed against Madden "might have been foreseeable."

*In Travelers Ins. Co. v. Cole*, 631 S.W.2d 661 (Mo.App.1982), the court dealt with a policy definition of "occurrence" essentially similar to the definition of that term contained in the instant policy. The court said, at p. 664:

"Language in the homeowner's insurance policy which excludes coverage for bodily injury or property damage caused to others which is either expected or intended from the standpoint of the insured has been construed to exclude from coverage the insured's intentional acts.

"Injury or damage is intentional if the insured acts with the specific intent to cause harm or if the insured's intent to harm is inferred as a matter of law from the nature or character of the act.... Intent to harm is inferred if the natural and probable consequences of an act are to produce harm." (Citing authorities.)

In *Truck Ins. Exchange v. Pickering*, 642 S.W.2d 113, 116 (Mo.App.1982), a case dealing with bodily injury rather than property damage, the court said:

"[A]n injury is 'expected or intended' from the standpoint of the insured if a reason for an insured's act is to inflict bodily injury or 'when the character of

the act is such that an intention to inflict an injury can be inferred' as a matter of law."

In *Taylor-Morley-Simon v. Michigan Mut. Ins. Co.*, 645 F.Supp. 596 (E.D.Mo. 1986), a comprehensive general liability policy contained the definitions of "occurrence" and "property damage" which appear in the instant policy. Referring to the term "accident" contained in the definition of "occurrence," the court said at pp. 599–600:

"The term 'accident' is construed broadly and not limited to an event which occurs suddenly. *St. Paul Fire and Marine Ins. Co. v. Northern Grain Co.*, 365 F.2d 361, 364–65 (8th Cir.1966). Thus, an accident includes that which happens by chance or fortuitously, without intention or design, and which is unexpected, unusual, and unforeseen. Id. Damage within the coverage of a liability insurance policy may include that resulting from the insured's negligence. *White v. Smith*, 440 S.W.2d 497, 508 (Mo.App. 1969)."

The fact that Madden itself possessed and used the trailer from June 13, 1979, to August 31, 1984, and indeed resisted, although unsuccessfully, Campbell's replevin action seeking to gain possession of it, demonstrates beyond doubt that Madden expected and intended that Campbell suffer the loss of use of the trailer. It is no answer to say that the outcome of the replevin action was itself unexpected by Madden and was thus an accident, an issue which need not be decided because, assuming arguendo that it was, Campbell's loss of use did not stem from the outcome of that litigation but from the conduct of Madden which gave rise to that outcome. That conduct was not an accident.

Neither party cites cases dealing with a like set of facts and the research of this court has been similarly unrewarding. There are, however, cases with factual situations sufficiently analogous to constitute support for the holding of the trial court. They include *Angelina Cas. v. Pattonville-Bridgeton Terr.*, 706 S.W.2d 483 (Mo.App. 1986); *Georgia Farm Bureau Mut. Ins. v.*

*Meriwether*, 169 Ga.App. 363, 312 S.E.2d 823 (1983); *Foxley & Co. v. U.S. Fid. & Guar. Co.*, 203 Neb. 165, 277 N.W.2d 686 (1979); *General Ins. Co. of America v. Palmetto Bank*, 268 S.C. 355, 233 S.E.2d 699 (1977); and *B & L Furniture Co. v. Transamerica Insurance Co.*, 257 Or. 548, 480 P.2d 711 (1971). See, generally, 31 A.L.R.4th 957. Each involved a liability policy containing a definition of "occurrence" identical with, or substantially similar to, the definition of that term contained in the instant policy. Each involved intentional conduct on the part of the insured and the insured's misconception of his legal position based on that conduct. In each the insured's conduct resulted in damage to a third person. In each the damage was intended or expected from the standpoint of the insured. In each the holding was that the liability insurer had no duty to defend or indemnify the insured.

In *Angelina Cas. v. Pattonville-Bridgeton Terr.*, supra, the insured was a fire protection district which was sued by two former employees who claimed that they were wrongfully discharged by the district for engaging in constitutionally protected activity. Referring to the policy definition of "occurrence," the court said, at p. 484:

"This language excludes coverage for the insured's intentional acts.... Injury or damage is intentional if the insured has acted with the specific intent to cause harm and such intent can be inferred as a matter of law if the natural and probable consequences of an act are to produce harm."

The employees had pleaded, in the underlying action, that the insured had conspired to discharge them. This allegation, said the court, was based on intentional acts of the insured and the policy afforded no coverage.

In *Georgia Farm Bureau Mut. Ins. v. Meriwether*, supra, Meriwether, the insured, was sued by plaintiffs who alleged that he had injured them by closing a public road. Meriwether contended that he had not blocked a public road but merely

closed a gate across a private farm road entirely on his own property.

312 S.E.2d at p. 824 the court said:

"There appears to be substantial dispute as to whether [Meriwether] blocked a public road or a private farm road. Accordingly, a question would exist in that lawsuit against [Meriwether] as to whether [he] has any liability to the plaintiffs in that action. However, there is no dispute in the present action concerning the fact that [Meriwether] intentionally blocked the disputed way. That being so, [Meriwether's] act cannot be said to be accidental and is, therefore, not an 'occurrence' within the definition of that word in the policy."

In *Foxley & Co. v. U.S. Fid. & Guar. Co.*, supra, Foxley, the insured, acting under its understanding of its legal rights, caused a number of water hydrants to be severed from a water system and caused damage to the remainder of the system. Both American Savings and Foxley claimed ownership of the water system and hydrants, each claiming under a quit claim deed from the United States. In the underlying action which American Savings brought against Foxley, the court found in favor of American Savings on the legal question of ownership and awarded damages to American Savings for the injuries to the water system. Foxley then sued his insurer for its failure to defend the underlying action or to satisfy the judgment.

277 N.W.2d at p. 688 the court said:

"[W]e hold that a policy undertaking to pay damages because of injury to or destruction of property caused by accident does not cover damages caused by the trespass of the policyholder upon the land of another when the damage is the natural result of the intentional act of the policyholder.

. . . . .

"Since the injury resulted from a mistake of law and was not an accident within the meaning of the policy, the decision of the trial court must be reversed and the petition dismissed."

In *General Ins. Co. of America v. Palmetto Bank*, supra, the insured, Home Wholesale, sublet a warehouse to Booth. Booth stored some machines in the warehouse. A bank had a security interest in the machines. When Booth defaulted on the rent, Home brought a proceeding "for distraint of rent," a public sale was held, and the machines were sold. Thereafter the bank sued Home for an accounting and Booth later sued Home for "an illegal and unreasonable distress." The court held that there was no coverage under the policy because there was no "occurrence."

233 S.E.2d at p. 701 the court said:

"The policy requires that there be both (1) an 'occurrence' which (2) causes 'property damage.' First, we do not think there was 'occurrence.' There was not an 'event' which resulted in property damage 'neither expected nor intended from the standpoint of the insured.' The complaints alleged that Home Wholesale intentionally distrained the machines. Assuming, for argument, that the loss of use by Booth was 'damage' to the machines, this damage was certainly expected and intended by Home Wholesale—it was, in other words, not caused by an 'occurrence.'"

The court also held that there was no "property damage" but the definition of the latter term was not broad enough to cover mere loss of use as distinguished from injury to or destruction of tangible property.

In *B & L Furniture Co. v. Transamerica Insurance Co.*, supra, the insured sold furniture to a buyer under a conditional sales contract. Later the insured repossessed the furniture and the buyer brought an action for conversion against the insured and recovered a judgment. The insured then sued its liability insurer for indemnity.

480 P.2d at p. 712 the court said:

"The comprehensive liability policy insured plaintiff for various liabilities including 'property damage * * * caused by an occurrence.' The policy defined 'occurrence' as 'an event, including injurious exposure to conditions, which re-

sults, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured.' "

The court held it was not necessary to decide whether indemnification for the act of conversion was unenforceable as against public policy because it concluded that the conversion did not constitute "property damage."

This court holds that the $27,500 loss incurred by Madden in the defense and satisfaction of its dispute with Campbell was not caused by "an occurrence" because there was no "property damage neither expected nor intended from the standpoint of the insured" resulting from an accident.

The judgment is affirmed.

PREWITT, P.J., disqualified.

HOGAN and MAUS, JJ., concur.