[No. G016416. Fourth Dist., Div. Three. Feb. 26, 1998.]

DYNAMIC CONCEPTS, INC., Plaintiff and Appellant, v.
TRUCK INSURANCE EXCHANGE, Defendant and Appellant.

## Counsel

William H. Ford III, Claudia J. Serviss, Michael D. Collins, George H. Kim and Paul C. Cook for Plaintiff and Appellant.

Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone, Lance A. LaBelle, David B. Ezra, Greines, Martin, Stein & Richland, Irving H. Greines, Marc J. Poster and Robert A. Olson for Defendant and Appellant.

## OPINION

**CROSBY, J.**—This appeal is brought by an insured who demanded its liability insurer immediately provide independent counsel pursuant to Civil Code section 2860 when the insurer agreed to defend under a reservation of rights in an action involving covered and uncovered claims. The insured's ultimatum to its insurer was to retain *Cumis*[1] counsel forthwith or be considered as not having provided a defense at all. The insured unilaterally settled the case, even though the insurer appointed defense counsel, without allowing that attorney to participate because of the reservation of rights.

The insured's unseemly haste to resolve a dubious *Cumis* situation reminds us of the farmer who pulled up his crops each night to see how they were growing. We decline to adopt a rule that would encourage insureds to cultivate conflicts with carriers rather than resolve them. We appreciate the insurer's obligation to provide a competent and ethical defense for an entire complaint, but no breach of the insurer's duty of defense has been established here to justify the insured's drastic decision to immediately settle the underlying action and exclude the insurer from participating in the negotiations.

### I

Truck Insurance Exchange (Truck) issued a commercial general liability (CGL) policy to Dynamic Concepts, Inc., a computer software company. The policy provided coverage against claims for bodily injury, property damage, advertising offense, and personal injury. In August 1990, Dynamic and a codefendant, The Language Corporation, were sued in federal court by a German distributor, UniBasic Computer Service. UniBasic alleged defendants wrongfully terminated a sales distribution agreement to distribute UniBasic-N software in certain markets. According to UniBasic, the agreement entitled it to obtain the source code to the software after purchasing 5,000 licenses. UniBasic alleged it tendered the sums necessary to purchase the 5,000 licenses but Dynamic responded by terminating the distribution agreement.

---

[1]Although Civil Code section 2860 speaks of "independent" counsel, we use the eponym "*Cumis* counsel," based on *San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494, 50 A.L.R.4th 913]. We acknowledge that section 2860 partially changed the *Cumis* rule.

The complaint contained causes of action for breach of contract, fraud, interference with prospective economic advantage, RICO (Racketeer Influenced and Corrupt Organizations Act) violations and declaratory relief. A fourth cause of action for "Conversion [Replevin]" claimed Dynamic used a false pretext to obtain computers owned by UniBasic's customers. It sought their return, as well as damages for loss of their use. A sixth cause of action alleged Dynamic libeled UniBasic by denigrating its business practices, saying its managing director " 'tells lies' " and "is a 'fool.' "

On February 4, 1991, Dynamic's personal attorney, Ernest Chen, tendered the defense to Truck. He identified the libel claim as triggering the duty to defend under the policy's "personal injury" and "advertising offense" coverages.

Truck accepted the defense under a reservation of rights, designating Attorney Patrick Sheehy to provide the defense. Sheehy was not retained to provide coverage advice to Truck or to represent Truck's own interests.

On April 8, Chen refused to accept the defense unless Truck "clearly and unconditionally" withdrew its reservation of rights letter and agreed to indemnify any resulting judgment, regardless of coverage. Sheehy responded by letter the next day, agreeing to allow Chen to retain control of the litigation (while his firm associated in the defense), and stating he "look[ed] forward to working with you on this matter and will assist you in any way that we can." He asked Chen to inform Truck "if you believe this is a *Cumis* situation . . . ."

Chen turned nasty in his reply. He said Truck's reservation of rights "necessarily" triggered an obligation to pay *Cumis* counsel. He accused Sheehy of acting in bad faith and of being retained "to serve no function but to look for a pretext" to deny coverage. He refused to speak or meet with him, acerbically noting "there is no point in even calling my office to schedule it."

On April 18, Truck wrote Chen confirming he could retain control of the litigation, but stated it would pay Sheehy's legal fees to defend Dynamic, pending coverage counsel's review "to clarify the *Cumis* issues." Truck asked Chen to explain in writing his reasons, "[i]f you believe there is a conflict . . . ."

Chen responded by filing suit on Dynamic's behalf against Truck for bad faith and against Sheehy for breach of fiduciary duty. Because of Dynamic's

lawsuit against Sheehy, Truck reassigned the defense (as "second chair") to Attorney Keith D. Koeller, again allowing Chen to retain control. Truck reiterated that "Mr. Koeller will not participate in any review, investigation or analysis of [Chen's] duties under section 2860 of the Civil Code. Nor will he be involved in any coverage issues whatsoever."

Truck retained a third lawyer, Joseph Lovretovich, to advise with respect to *Cumis* and Civil Code section 2860. Lovretovich contacted Chen, detailing Truck's billing requirements and requesting that Chen send his bills directly to him. He also asked for a personal meeting "for the purpose of setting forth an understanding of the rights and duties of all the participants regarding Civil Code section 2860" and because "[y]ou have further advised me that a settlement is close to consummation with respect to this litigation . . . ."

Chen refused these requests. He claimed Dynamic had no duty to inform Truck of any potential settlement "because it had consciously chosen to take the position set forth in its April 18, 1991 letter." He proceeded to secretly negotiate with UniBasic, declining to meet with either Koeller (as defense counsel) or Lovretovich (as coverage counsel) "until the settlement of the UniBasic Computer Service litigation is, as the saying goes, a done deal." Neither UniBasic nor Dynamic ever communicated a settlement demand to Truck or asked that it contribute to any settlement. The trial court characterized Chen's response as " 'go fly a kite.' "[2]

The settlement was finalized and reduced to writing by May 10, and fully executed by the end of the month. The federal lawsuit was dismissed in early June. Dynamic relinquished its ownership rights of the *UniBasic-N* software and promised to return the computer equipment to UniBasic's customers. It was not obligated to make any cash payment, and there was no other monetary consideration.

Truck initially sought to arbitrate whether it owed Dynamic a duty to provide *Cumis* counsel. This court ruled the arbitration provisions in Civil Code section 2860 did not apply to this legal issue. (*Truck Ins. Exchange* v. *Dynamic Concepts, Inc.* (1992) 9 Cal.App.4th 1147 [11 Cal.Rptr.2d 873].)

---

[2]Chen's letters are noteworthy for their harsh, intemperate tone and lack of civility. At oral argument Dynamic's appellate counsel aptly characterized the lawyers' correspondence as "electric," "with a lot of heat, and sometimes very little light," and "white noise and distraction," although harsher terms would also fit just as well.

The matter proceeded to trial, with the parties agreeing to first try the issues presented in Truck's cross-complaint for declaratory relief.[3] After hearing evidence the superior court held Truck had a duty to defend because there was a potential for coverage under the libel cause of action; the court found no duty to defend any other cause of action, including the conversion claim. While the court had difficulty construing "how an insurer's hired defense attorney could control the outcome of that cause of action for the benefit of the carrier, thus creating a conflict of interest calling for the appointment of independent counsel," it nonetheless concluded, "Here, although highly unlikely, it could be that a *Cumis* duty arose."

The court also ruled, however, that Truck was not responsible for the settlement of the underlying action because "money damages, arising from covered losses, were not incurred and, more importantly, because [Truck] was precluded from participating in settlement discussions. . . ." The parties stipulated that Dynamic's *Cumis* fees amounted to $20,000. Dynamic declined to further proceed with the bad faith portion of the case, stating, "I think we've hit the end of our trail here."

Dynamic appealed from the judgment exonerating Truck from any obligation for the settlement of the underlying action. Truck filed a protective cross-appeal from the portions of the superior court's judgment declaring that it owed a duty to defend and to provide *Cumis* counsel to Dynamic.

## II

Dynamic seeks to recover the value of its settlement with UniBasic (and other extracontractual damages) for Truck's alleged breach of its duty to defend. Dynamic believes an insurer that rejects an insured's demand to provide unconflicted counsel breaches its duty to defend and is thereby obligated to pay any resulting settlement, regardless of the lack of coverage. As Dynamic reasons, "[a]ny other rule deprives the insured of the full measure of the defense for which he or she paid premiums, since if the insured is required to pay for the defense counsel, the insured obviously does not enjoy the benefits of the contract."

Because Dynamic rests this appeal on Truck's alleged breach of its contractual duty to defend, we begin with a recent exposition of the subject in *Buss* v. *Superior Court* (1997) 16 Cal.4th 35 [65 Cal.Rptr.2d 366, 939

---

[3]Dynamic described these "exclusively" legal issues to be first disposed of by the court before any trial on issues of fact as, "Was there a duty to defend Dynamic Concepts? And that's a yes or no, I suppose. And then number 2: Was there a duty to provide independent counsel to Dynamic Concepts?"

P.2d 766]. *Buss* held a CGL insurer had a "prophylactic," not a contractual, duty to defend a professional basketball team owner in an action raising claims for which there was no potential for coverage. Jerry Buss, the owner of a professional basketball team, was sued for $297 million in damages for unilaterally terminating an exclusive agency contract for advertising for a sports arena and cable television network. Most of the 27 causes of action involved uncovered business torts and breach of contract claims; only a single defamation allegation raised a potential for coverage under the "personal injury" and "advertising offense" sections of the CGL policies. While the insurer provided a defense to the entire action by paying for Buss's *Cumis* counsel, it sought reimbursement for the defense costs for the uncovered claims after the underlying action was settled.

The Supreme Court held the insurer had a right to reimbursement to avoid a "windfall" to Buss. While the insurer's duty to defend was broader than its duty to indemnify, it was "not unlimited," extending to claims that were potentially covered "but no further." (16 Cal.4th at p. 46.) Buss paid no premiums to be defended for the consequences of his decision to terminate the advertising company contract. His insurer had no contractual duty to defend those uncovered claims. And he had no objectively reasonable expectation otherwise: "[T]o purport to make such a justification would be to hold what we cannot—that the duty to defend exists, as it were, in the air, without regard to whether or not the claims are at least potentially covered." (*Id.* at p. 48.)

Here, as in *Buss*, most of UniBasic's allegations against Dynamic are for uncovered economic losses which do not fall under the policy definitions of "bodily injury" or "property damage." (*Waller* v. *Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1 [44 Cal.Rptr.2d 370, 900 P.2d 619]; see also *Giddings* v. *Industrial Indemnity Co.* (1980) 112 Cal.App.3d 213, 219 [169 Cal.Rptr. 278] [". . . strictly economic losses like lost profits, loss of goodwill, loss of the anticipated benefit of a bargain, and loss of an investment, do not constitute damage or injury to tangible property covered by a comprehensive general liability policy"].) Only the libel claim appears to provide a basis for a duty to defend, thereby giving rise to Truck's "prophylactic" duty to defend the *entire* complaint, subject to the insurer's implied-in-law right to reimbursement. (*Buss* v. *Superior Court, supra,* 16 Cal.4th at p. 49.)[4]

*Buss* undercuts many of Dynamic's arguments concerning Truck's contractual violations of benefits (namely a full defense to the entire complaint)

---

[4]The superior court properly found there was no potential for coverage of the conversion/replevin claim. (*Collin* v. *American Empire Ins. Co.* (1994) 21 Cal.App.4th 787, 816-819 [26 Cal.Rptr.2d 391]; see also *Federated Mut. Ins. Co.* v. *Madden Oil Co.* (Mo.Ct.App. 1987) 734 S.W.2d 258 [liability insurer had no duty to defend or indemnify insured in replevin action for damages for loss of use of a trailer during the time insured possessed and used it].)

allegedly due under the policy. Instead, as *Buss* recognizes, many of the "windfall" benefits run in the favor of the insured, not the insurer. But for the fortuity of the covered libel obligation, Dynamic would have been required to bear the entirety of the costs of the defense of the underlying action.

## III

We turn now to the issue, not decided in *Buss*, of whether an insurer in an action involving covered and uncovered claims is automatically obliged to provide independent counsel pursuant to Civil Code section 2860, subdivision (b). Does the insurer breach its duty to defend when it assigns competent outside counsel pending a further analysis of the *Cumis* issue? As we explain, the answers to each of these questions is no.

No reason exists to allow insureds who face the prospect of no defense or indemnity for uncovered claims to "set up" insurers by making *Cumis* demands with unreasonably short deadlines, especially where the issues listed in the underlying litigation do not coincide with the issues raised in the reservation of rights and where the insurer agrees to provide a full and complete defense without regard to coverage.

An insurer's reservation of rights may create a disqualifying conflict of interest requiring the insurer to pay the cost of *Cumis* counsel to represent the insured in the underlying action. (Civil Code, § 2860, subd. (b).) But not every reservation of rights entitles an insured to select *Cumis* counsel. There is no such entitlement, for example, where the coverage issue is independent of, or extrinsic to, the issues in the underlying action (*Native Sun Investment Group* v. *Ticor Title Ins. Co.* (1987) 189 Cal.App.3d 1265 [235 Cal.Rptr. 34]) or where the damages are only partially covered by the policy. (*Blanchard* v. *State Farm Fire & Casualty Co.* (1991) 2 Cal.App.4th 345, 350 [2 Cal.Rptr.2d 884] [no *Cumis* counsel required for complaint involving covered and uncovered damages]; *Foremost Ins. Co.* v. *Wilks* (1988) 206 Cal.App.3d 251 [253 Cal.Rptr. 596] [same as to uninsured punitive claim].)

---

We further agree with Truck that "[n]o matter how construed, the 'Conversion (Replevin)' cause of action only asserts noncovered claims for UniBasic's purely *economic loss* flowing from *its customers'* loss of use of *their* property, not from its own loss of use of its own property; for the replacement value of the computers; and for the physical return of the computers themselves. None of these claims constitutes property damage." (See also *Hurley Construction Co.* v. *State Farm Fire & Casualty Co.* (1992) 10 Cal.App.4th 533, 539-540 [12 Cal.Rptr.2d 629] [rejecting claim that action against insured contractor for performing substandard work was actually "a subrogation action in disguise": "State Farm reasonably concluded that it had no duty to defend until the property owners filed their own actions for property damages or personal injuries."].)

A mere possibility of an unspecified conflict does not require independent counsel. The conflict must be significant, not merely theoretical, actual, not merely potential. (*Lehto* v. *Allstate Ins. Co.* (1994) 31 Cal.App.4th 60, 71 [36 Cal.Rptr.2d 814] ["Allstate . . . notes that, so long as there existed only a potential conflict of interest between its two insureds, it was not required to retain separate counsel for father and son. . . . [T]he interests of [the two insureds], while potentially adverse, were not in actual conflict."]; see also Croskey et al., Cal. Practice Guide: Insurance Litigation 2 (The Rutter Group 1995) ¶ 7:855 rev. #1, 1997 ["If an *actual* conflict of interest arises between insurer and insured (e.g., coverage is disputed), the insured may be entitled to independent (*Cumis*) counsel." (italics added)].)

Civil Code section 2860, subdivision (b) specifically provides that "a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage . . . ." It further uses the permissive "conflict of interest *may* exist," rather than the mandatory "shall." It does not clearly state when the right to an independent counsel vests.[5]

These authorities preclude us from adopting Dynamic's proposed per se rule requiring the appointment of an independent counsel whenever a carrier issues a so-called "global reservation of rights" or, pursuant to *Buss* v. *Superior Court, supra*, 16 Cal.4th 35, reserves its right to seek reimbursement for defense costs for uncovered claims.[6] The potential for conflict requires a careful analysis of the parties' respective interests to determine

---

[5]Civil Code section 2860 provides as follows in pertinent part: "(a) If the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured unless, at the time the insured is informed that a possible conflict may arise or does exist, the insured expressly waives, in writing, the right to independent counsel. . . . [¶] (b) For purposes of this section, a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage; however, when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist. No conflict of interest shall be deemed to exist as to allegations of punitive damages or be deemed to exist solely because an insured is sued for an amount in excess of the insurance policy limits."

In this regard Civil Code section 2860 overruled dicta in *San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc., supra,* 162 Cal.App.3d 358. The Legislature declined to adopt the absolutist view that insurer-appointed defense counsel will only offer token resistance to claims that fall outside a policy's coverage terms or limits or will steer the defense in a direction favorable to the insurer.

[6]We do not decide whether an insurer may be estopped from seeking reimbursement from its insured for the defense costs of uncovered claims when it insists upon appointed counsel rather than allowing the insured to control the defense, with its accompanying control and oversight over defense fees and costs. (See *Tomerlin* v. *Canadian Indemnity Co.* (1964) 61 Cal.2d 638 [39 Cal.Rptr. 731, 394 P.2d 571] [carrier estopped from relying on coverage defense after inducing insured to withdraw personal counsel].)

whether they can be reconciled (such as by a defense based on total nonliability) or whether an actual conflict of interest precludes insurer-appointed defense counsel from presenting a quality defense for the insured. As the court noted in *Native Sun Investment Group* v. *Ticor Title Ins. Co., supra,* 189 Cal.App.3d at page 1277, insurer-appointed defense counsel may obviate any *potential* conflict involving uncovered claims by " 'proceed[ing] diligently to litigate the matters that he was charged with on behalf of his client [the insured]. At no time, the court finds, did [appointed counsel] prefer the [insurer's] interest to those of his client, [the insured], nor did he allow questions of coverage—though he was informed of them—to interfere with his litigation decisions regarding the third party claims.' "

We cannot accept Dynamic's argument that Truck's conduct, under the facts and circumstances of this case, is the equivalent of providing no defense at all. (See *Samson* v. *Transamerica Ins. Co.* (1981) 30 Cal.3d 220 [178 Cal.Rptr. 343, 636 P.2d 32] [insurer repudiated its obligation to defend].) Truck offered to provide Dynamic with a defense by outside counsel whose only role was to defend Dynamic, not represent Truck. Truck further agreed to waive its contractual right to control the defense by ceding control to Chen, with appointed counsel sitting only as second chair.[7]

Both Sheehy and Koeller, as insurer-appointed defense counsel, owed their primary obligations to Dynamic (*Barney* v. *Aetna Casualty & Surety Co.* (1986) 185 Cal.App.3d 966, 982 [230 Cal.Rptr. 215]) to provide the same level of competent and ethical representation "as if [it] had retained [them] personally." (*Lysick* v. *Walcom* (1968) 258 Cal.App.2d 136, 146 [65 Cal.Rptr. 406, 28 A.L.R.3d 368].) There is no basis on the record to presume they would have violated their stringent ethical responsibilities to completely defend Dynamic for *all* allegations of the entire complaint, covered or uncovered. There similarly is no support for the proposition Truck intended to offer merely a token defense for uncovered claims or that either Sheehy or Koeller were retained to act as "coverage spies" to generate potential coverage defenses. Had they so misbehaved, they would have been exposed to malpractice liability, disciplinary actions and possible loss of coverage defenses by Truck. (*Betts* v. *Allstate Ins. Co.* (1984) 154 Cal.App.3d 688, 716 [201 Cal.Rptr. 528] [finding liability against insurance defense attorney and insurer for wrongly favoring carrier's interests over insured's]; *American Mut. Liab. Ins. Co.* v. *Superior Court* (1974) 38 Cal.App.3d 579, 592

---

[7]This was a significant concession. (See, e.g., *Buss* v. *Superior Court, supra,* 16 Cal.4th at p. 63 (dis. opn. of Kennard, J.) ["In exchange for the added expense of defending claims not potentially covered, the insurer acquires a freer hand and enhanced control in the defense of those claims that are potentially covered."].)

[113 Cal.Rptr. 561] [defense counsel owes duty not to reveal to insurer confidential information obtained from insured regarding coverage].)[8]

This is not a case where Truck restricted defense counsel's discovery activities to reduce litigation costs. Insurer-imposed restrictions on discovery or other litigation costs may well violate the insurer's duty to defend as well as the attorneys' ethical responsibilities to exercise their independent professional judgment in rendering legal services. But there is no evidence Truck instructed Sheehy or Koeller to limit their activities regarding written discovery or depositions, or otherwise inhibited counsel's ability to adequately defend the entire case.[9]

While Truck sought further information from Chen regarding any potential conflict, Dynamic's only response was to file a bad faith suit. Truck did not refuse to allow *Cumis* fees. And its coverage counsel unsuccessfully attempted to meet with Chen to ascertain the nature of the conflict. But Chen repeatedly refused to do so.

. As we have noted, most of the claims in the underlying action involved an uncovered business and breach of contract dispute for which there was not even the potential for coverage and, hence, no duty to defend. The supposed *Cumis* conflict for the covered libel claim was vague, ephemeral and highly

---

[8]See also *Tank v. State Farm Fire & Cas. Co.* (1986) 105 Wn.2d 381 [715 P.2d 1133, 1137-1138] (imposing "enhanced" obligation of fairness on reserving insurers to retain competent defense counsel who fully informs and loyally represents the insured and who refrains from any action that demonstrates a greater concern for the insurer's financial interests than for the insured's potential exposure.)

[9]As the trial court noted, Truck never disclaimed any responsibility to underwrite such defense costs as an interpreter to translate records written in German or a paralegal to prepare a computerized index of documents. Truck would have paid for those costs if incurred by Sheehy or Koeller, its appointed counsel, and, possibly by Chen as well. These would have been appropriate matters to discuss in face-to-face discussions between defense counsel, meetings in which Chen refused to participate.

In this regard we question the wisdom and propriety of so-called "outside counsel guidelines" by which insurers seek to limit or restrict certain types of discovery, legal research, or computerized legal research by outside attorneys they retain to represent their insureds where there is a potential for an uncovered claim. Some guidelines go so far as to call for the use of paralegals, rather than attorneys, to respond to "routine" discovery requests or prohibit the retention of experts or the filing of certain pretrial motions until shortly before trial. Under no circumstances can such guidelines.be permitted to impede the attorney's own professional judgment about how best to competently represent the insureds. If the attorney's representation is to be limited in any way that unreasonably interferes with the defense, it is the *insured*, *not* the insurer, who should make that decision. (See discussion on "Outside Counsel Guidelines" in Richmond, *Lost in the Eternal Triangle of Insurance Defense Ethics* (1996) 9 Geo. J. Legal Ethics 475, 531-535.) Nothing in the record indicates Truck intended to so arbitrarily limit the manner by which either Sheehy or Koeller would represent Dynamic in the UniBasic litigation.

theoretical. Its underpinnings even eluded Chen; as Dynamic now says, "[N]one of us will ever know why Mr. Chen did not fully articulate each and every reason why he was entitled to be the *Cumis* lawyer."[10]

Given the complexities of any *Cumis* analysis, Truck did not breach any legal obligation to defend Dynamic when it offered to fully defend at its own expense through appointed counsel pending further coverage analysis of the *Cumis* issue. A carrier is subject to tort liability for bad faith only where it unreasonably fails to provide benefits due under the policy or the law. (*Carlton* v. *St. Paul Mercury Ins. Co.* (1994) 30 Cal.App.4th 1450, 1456, 1459 [36 Cal.Rptr.2d 229] [while claim "might have been handled more expeditiously," carrier's alleged delay "was not so unreasonable as to give rise to bad faith liability" where insured delayed in supplying necessary information]; *California Shoppers, Inc.* v. *Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1 [221 Cal.Rptr. 171].) In particular, insurers are entitled to a reasonable period of time to analyze a situation requiring a coverage decision. (See, e.g., *Glenn* v. *Fleming* (1990) 247 Kan. 296 [799 P.2d 79] [no bad faith liability from insurer's failure to accept offer with unreasonable time limit].) Under all these circumstances, we cannot place Truck in the category of a nondefending carrier who unreasonably failed to provide any defense at all, thus allowing, or even forcing, its insured to unilaterally settle the underlying action.

Since we disagree with Dynamic's premise equating Truck's conduct with that of a nondefending carrier, we need not resolve the parties' sharp disagreement as to whether insureds can hold a nondefending carrier responsible for uncovered claims in any ensuing settlement or judgment between them and the underlying plaintiffs. Recently, in *Amato* v. *Mercury Casualty Co.* (1997) 53 Cal.App.4th 825, 834-835 [61 Cal.Rptr.2d 909], the court held that an insured was entitled to recover from an insurer the full amount of a default judgment (even though excluded by the policy) where the insurer's tortious breach of the duty to defend left the insured without financial resources to mount a defense.

---

[10]Dynamic claims there was a common issue conflict because of the exclusion in the "personal injury" coverage for publications or utterances "made by or at the direction of any insured with knowledge of the falsity thereof." But Truck *never* raised this exclusion in its reservation of rights letter or at any time until after Dynamic's settlement with UniBasic, thereby precluding any actual conflict during the pendency of the underlying action. The existence of a conflict would have estopped Truck from later raising the provision. (*Tomerlin* v. *Canadian Indemnity Co., supra*, 61 Cal.2d 638; *Foremost Ins. Co.* v. *Wilks supra*, 206 Cal.App.3d at p. 258 [no obligation for *Cumis* counsel in defamation action where insurer agreed to defend without raising intentional acts exclusion].) And while Truck reserved its rights to raise an exclusion to the advertising offense coverage for failure to perform a contract, this would not have been an issue in the underlying action since the existence or performance of a contract was not an element of nor a defense to the *libel* claim.

*Amato* is not applicable here "primarily because of the unusual factor of the default." (53 Cal.App.4th at p. 834.) Truck did not act in bad faith in responding to Dynamic's *Cumis* demand, and it certainly did not leave Dynamic without a defense. It did not refuse to settle, and there was no default judgment. Dynamic suffered no damage when Lovretovich asked Chen to forward his invoices and explain why Truck's reservation of rights created a conflict of interest in the defense.

## IV

The tripartite relationship between insurer, insured and insurance defense counsel is complicated enough without adding an additional element of a short-fuse deadline for decisions with respect to *Cumis* counsel. Wherever possible, the tripartite relationship requires all participants to work in harmony as a "loose partnership, coalition or alliance directed toward a common goal, sharing a common purpose" (*American Mut. Liab. Ins. Co.* v. *Superior Court, supra,* 38 Cal.App.3d at p. 592), "to avoid or at least minimize liability." (*Buss* v. *Superior Court, supra,* 16 Cal.4th at p. 46.)

The best way to achieve this common purpose is to allow both insurer-appointed defense and independent counsel to participate in the settlement negotiations. What logic or justification was there to exclude Sheehy or Koeller from the settlement talks? Dynamic's shrill insistence upon doing so strongly suggests an intent to promote a new lawsuit, rather than terminate an existing one. This cannot be countenanced any more than would an effort by appointed counsel to structure a settlement or judgment to defeat coverage.

In *White* v. *Western Title Ins. Co.* (1985) 40 Cal.3d 870, 900, footnote 2 [221 Cal.Rptr. 509, 710 P.2d 309], similar concerns regarding gamesmanship and tactical maneuvers caused dissenting Justice Kaus to criticize overly aggressive insureds' attorneys who "spend their wits and energies trying to maneuver the insurers into committing acts which the insureds can later trot out as evidence of bad faith." And in *J.B. Aguerre, Inc.* v. *American Guarantee & Liability Ins. Co.* (1997) 59 Cal.App.4th 6 [68 Cal.Rptr.2d 837], the Court of Appeal affirmed a judgment of dismissal on demurrer, holding a liability insurer did not act unreasonably as matter of law in refusing to meet the plaintiff's $2 million settlement demand, despite the alleged risk of exposing the insured to uncovered punitive liability. The insured's alleged fear of his punitive exposure coerced him to contribute to a settlement out of duress. Looking through the form of the transaction to its "economic substance," Justice Neal observed as follows: "What we have here, at bottom, is an effort by [the insured] to concoct a bad faith claim out

of whole cloth . . . with the 'ingenious assistance of counsel.' . . . [The insured] has attempted to position itself to pursue a high stakes, bad faith case, seeking punitive damages, from which it hopes to emerge not only with the [underlying] claim disposed of at no cost to [the insured], but a profit as well in the form of damages recovered from [the insurer]. [¶] Bad faith litigation is not a game, where insureds are free to manufacture claims for recovery. Every judgment against an insurer potentially increases the amounts that other citizens must pay for their insurance premiums." (*Id.* at pp. 17-18.)

We could hardly have said it better. Dynamic's exclusion of insurer-appointed defense counsel from the settlement negotiations and its refusal to further communicate with Truck fully justifies the judgment for Truck. Truck's actions *at the time of the settlement* did not violate its obligations, contractual or prophylactic, to defend Dynamic in this mixed action in its entirety. Dynamic had no legal basis to stonewall Truck concerning the settlement.

The judgment is therefore affirmed insofar as it obliges Truck to pay Dynamic the sum of $20,000 as *Cumis* fees and as it exonerates Truck from any other liability to Dynamic.[11] Truck is entitled to costs on appeal.

Sills, P. J., and Wallin, J., concurred.

On March 27, 1998, the opinion was modified to read as printed above. The petition of appellant Dynamic Concepts, Inc. for review by the Supreme Court was denied June 10, 1998.

---

[11]Truck informs us that its cross-appeal, where it argues that there was no conflict of interest entitling Dynamic to *Cumis* counsel, is "protective only" and that we should address it only if we reverse the judgment on Dynamic's appeal.