Filed 8/26/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| FEDERAL INSURANCE COMPANY et al.,<br><br>    Plaintiffs, Cross-defendants, and Respondents,<br><br>    v.<br><br>MBL, INC.,<br><br>    Defendant, Cross-complainant and Appellant. | H036296<br>(Santa Clara County<br> Super. Ct. Nos. CV114309, CV119165) |
| GREAT AMERICAN INSURANCE COMPANY,<br><br>    Plaintiff, Cross-defendant, and Appellant,<br><br>    v.<br><br>FEDERAL INSURANCE COMPANY et al.,<br><br>    Defendants, Cross-complainants and Respondents. | H036578<br>(Santa Clara County<br> Super. Ct. Nos. CV114309, CV119165) |

After soil and groundwater contamination in the City of Modesto was traced back to a dry cleaning facility known as Halford's Cleaner's (Halford's), the federal government brought a Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) action against the owners of the property on which Halford's was located, as well as the lessees who owned and/or operated the facility, to recover the

costs of monitoring and remediating the contamination.[1]  The defendants in the *Lyon* action subsequently filed third-party actions against, among others, appellant MBL, Inc. (MBL), a supplier of dry cleaning products including perchloroethylene (PCE), seeking indemnity, contribution and declaratory relief.

MBL tendered the defense of these third-party actions to its insurers, Federal Insurance Company (Federal), Centennial Insurance Company (Centennial), Atlantic Mutual Insurance Company (Atlantic), Nationwide Indemnity Company (Nationwide), Utica Mutual Insurance Company (Utica) and Great American Insurance Company (Great American) (hereafter collectively referred to as Insurers).  The Insurers accepted the tender of defense, subject to reservations of various rights, and retained counsel to provide MBL with a defense.  MBL refused to accept retained counsel, arguing the Insurers' reservations of rights created a conflict of interest and demanding the Insurers instead pay for counsel of MBL's choosing.  The Insurers denied there was any such conflict of interest and filed declaratory relief actions.  The trial court granted summary judgment in favor of the Insurers, finding there was no actual conflict of interest.  On appeal, MBL contends the trial court erred in finding the Insurers were entitled to declaratory relief.  We shall affirm.

In a related appeal, Great American seeks to preserve its right to equitable contribution from the other Insurers in the event MBL's appeal is successful.  Alone among the Insurers, Great American paid MBL's independent counsel for the costs of defending the third-party actions, subject to a reservation of the right to reimbursement from MBL if it succeeded in its declaratory relief action.  Since we are affirming the judgments in favor of the Insurers on the question of MBL's right to independent

---

[1] The CERCLA action is entitled *United States v. Lyon* (E.D. Cal. June 25, 2008) [2008 U.S. Dist. LEXIS 67191] case No. 1:07-CV-00491-CJO-GSA (the *Lyon* action).

2

counsel--thus confirming that none of the Insurers, Great American included, was obligated to pay such counsel--Great American's appeal is moot and shall be dismissed.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

MBL supplies PCE, and other dry cleaning products, to dry cleaning facilities, and has done so for a number of years. In 2007, MBL was named as a defendant in a number of third-party complaints and cross-complaints filed in the *Lyon* action. According to the allegations of the *Lyon* action, wastewater containing PCE was discharged into the sewer system as part of Halford's dry cleaning operations until the mid-1980s. PCE was also leaking from an old dry cleaning machine through the floor of the facility into the soil and groundwater. In 1989, the site was placed on the National Priorities List of hazardous waste sites.

Clean up activities at the site, which are ongoing, began in 2000 when the EPA installed a groundwater treatment system and a soil vapor extraction system at the property.

The third-party complaints and cross-complaints alleged that MBL, among others: (1) purchased and resold chlorinated solvents to Halford's; (2) distributed, designed, assembled, maintained, controlled, operated and/or repaired parts of Halford's equipment; (3) engaged in service visits and inspections on Halford's premises, including testing and inspecting Halford's equipment and witnessing Halford's disposal of chlorinated solvents; (4) was legally responsible for and committed tortious acts; and, (5) in doing so acted as a coconspirator, aider, abettor, fraudulent transferee and fraudulent transferor of the other third-party defendants. The complaints sought contribution, equitable indemnity and declaratory relief from MBL.

MBL filed a cross-claim in the *Lyon* action which named as cross-defendants, among others, the City of Modesto, McGraw Edison Company and Bowe Permac, Inc.

3

MBL retained defense counsel, who tendered the defense of the *Lyon* action to the Insurers, requesting they appoint *Cumis*[2] counsel. The Insurers accepted the tender of defense subject to various reservations of rights, detailed below, and appointed counsel to defend MBL. MBL refused to allow the Insurers' appointed counsel to associate as defense counsel, asserting it was entitled to independent counsel of its own choosing pursuant to Civil Code section 2860.[3] The Insurers advised MBL it was only entitled to *Cumis* counsel if their reservations of rights created a conflict of interest and, with the exception of Great American, refused to pay the defense costs incurred by MBL's counsel.[4]

### A.     *Great American's policies*

Great American issued primary general liability insurance policies to MBL with policy periods from November 1, 1980 to November 1, 1983 (policy No. BP 2180454), November 1, 1983 to November 1, 1984 (policy No. BP 6272405-00) and November 1, 1984 to November 1, 1985 (policy No. BP 6272405-01).

---

[2] *San Diego Federal Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358.

[3] Further section references are to the Civil Code.

[4] Great American ultimately paid $66,455.24 to MBL's counsel in the defense of the *Lyon* action, though it reserved its rights to seek reallocation and/or reimbursement from MBL and/or the other Insurers.

Great American also paid MBL's counsel for the defense of another action, *Schultz v. Ichimoto* (E.D. Cal. Nov. 8, 2010) [2010 U.S. Dist. LEXIS 118964] No. 1:08-CV-00526 (the *Schultz* action). Like the *Lyon* action, the *Schultz* action alleged that MBL supplied PCE to one or more dry cleaning facilities in the City of Modesto and was at least partially responsible for environmental contamination occurring at those facilities.

Great American agreed to defend MBL in the *Schultz* action subject to the same reservation of rights it asserted in the *Lyon* action, including the right to seek reimbursement from MBL or the other Insurers for amounts paid to MBL's counsel. Great American ultimately paid MBL's counsel $26,176.78 in connection with the defense of the *Schultz* action.

4

Each of the Great American policies contained the following language regarding the duty to defend: "The company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments settlements."

Great American's reservations of rights explained that it "reserves its rights to decline coverage for any damages resulting from an occurrence outside of Great American's policy period," and that "Great American's duty to indemnify, if any, shall not exceed the remaining available limits under the policies at issue." Great American also stated that "[t]o the extent that punitive damages are awarded against MBL, such damages would not be covered," and "Great American reserves the right to seek reallocation and/or reimbursement pursuant to *Buss v. Superior Court* (1997) 16 Cal.4th 35."

B.     *Nationwide's policies and reservation of rights*

Nationwide issued three liability policies to MBL which covered the period from November 1, 1991 to November 1, 1994. These policies contained the following language relating to Nationwide's duty to defend: "We will have the right and duty to defend any 'suit' seeking [damages because of 'bodily injury' or 'property damage' to which this insurance applies]. We may at our discretion investigate any 'occurrence' and settle any claim or 'suit' that may result." The policies also provide that "[t]his insurance applies to 'bodily injury' and 'property damage' only if: [¶] . . . (2) The 'bodily injury' or 'property damage' occurs during the policy period."

Each of the Nationwide policies also contains pollution exclusions. The 1992 to 1993 policies exclude coverage for: "(1) 'Bodily injury' or 'property damage' arising out

5

of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants: [¶] . . . [¶] (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste. [¶] (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; [¶] . . . [¶] (2) Any loss, cost or expense arising out of any: (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants."

The 1993-1994 policy excludes coverage for bodily injury or property damage "which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time"; losses or expenses arising out of any "request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants"; and losses or expenses arising out of a "[c]laim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants."

Nationwide accepted MBL's tender of defense subject to a reservation of its rights, as follows: (1) to deny coverage for property damage that did not occur during the applicable policy periods (i.e., between November 1, 1991 and November 1, 1994); (2) to deny coverage for fines or penalties that are not "damages" as defined by the policies; (3) to deny coverage under the absolute pollution exclusions in the policies; and (4) to seek

reimbursement of defense costs if it is determined Nationwide had no duty to defend the claim.

C. *Federal and Utica policies and reservations of rights*

Federal issued a liability policy to MBL with an effective date of November 1, 1978 through November 1, 1980 (policy No. MP 3514 26 76). The liability policy issued by Utica to MBL had an effective date of November 1, 1976 through November 1, 1979 (policy No. 2955).

The insuring agreement set forth in the Utica policy provides: "The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false, or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements."

The Federal policy provides: "The company will pay on behalf of the insured all sums which the insured shall become obligated to pay as damages by reason of liability to which this insurance applies, imposed by law or assumed by the insured under any written contract, for bodily injury, property damage or personal injury caused by an occurrence and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury, property damage or personal injury, . . . and may make such investigation and settlement of any claim or suit as it deems expedient. . . ." (Emphasis omitted.)

In their reservations of rights letters, Federal and Utica reserved the right to deny coverage for: (1) any property damage that did not occur within the applicable policy

7

period; (2) any award of punitive damages; and (3) any damages awarded in excess of their respective limits of liability. They also reserved their right to seek reimbursement of defense costs under *Buss v. Superior Court*, *supra*, 16 Cal.4th 35 (*Buss*).

D. *Insurers' complaints for declaratory relief*

On June 6, 2008, the Insurers, with the exception of Great American, filed a complaint for declaratory relief against MBL. The first cause of action sought a declaration that the Insurers were not obligated to provide independent counsel to MBL and the second cause of action sought a declaration that the Insurers were relieved of their obligation to defend MBL because MBL's refusal to accept appointed defense counsel breached its contractual duty, set forth in each of the insurance policies, to cooperate with the Insurers.

On August 5, 2008, Great American filed a separate complaint seeking declaratory relief against MBL and the Insurers. In its complaint, Great American alleged it was not obligated to provide MBL with independent counsel to defend the *Lyon* action. Great American also alleged causes of action for declaratory relief and equitable contribution against the other Insurers.

In September 2008, MBL filed a cross-complaint in Great American's declaratory relief action, naming Great American and the Insurers as cross-defendants. In this cross-complaint, MBL asserted causes of action for declaratory relief, breach of contract and breach of the implied covenant of good faith and fair dealing.

In November 2008, pursuant to a stipulation by the parties, the separate declaratory relief actions brought by the Insurers and Great American were consolidated for all purposes by the trial court.

E. *Insurers' motions for summary adjudication in case No. H036296*

Nationwide, joined by Utica and Federal, moved for summary adjudication of the first cause of action for declaratory relief regarding their duty to provide independent counsel to represent MBL. In this motion, Nationwide, Utica and Federal argued that the

limited reservations of rights asserted by these insurers did not create a conflict of interest under section 2860. Atlantic and Centennial subsequently joined in the motion filed by Nationwide, Utica and Federal and filed a separate motion for summary judgment or, in the alternative, summary adjudication on MBL's cross-complaint.

In June 2009, after the matter was briefed and argued, the trial court granted: (1) Nationwide, Utica and Federal's motion for summary adjudication of the first cause of action; and (2) Atlantic and Centennial's motion for summary adjudication of the first and second causes of action in MBL's cross-complaint for breach of contract and breach of the implied covenant of good faith and fair dealing.[5] In its order, the court noted that "the *specific* reservations of rights by [the] insurers did not present a conflict which would require the appointment of independent counsel. [Citations.] The court further finds the *general* reservation of rights to deny coverage . . . does not present a conflict which would require the appointment of independent counsel." (Emphasis in original.)

Federal, Utica and Nationwide subsequently brought a separate motion for summary judgment on MBL's cross-complaint. In its opposition to this motion, MBL argued--for the first time--that Federal and Nationwide were obligated to provide independent counsel based on evidence that those insurers were providing a defense, through separate counsel, to other unrelated insureds in the *Lyon* action. With respect to Utica, MBL claimed it had conspired with Federal and Nationwide to "deprive MBL of its right to independent counsel." The trial court granted the motion for summary judgment, finding that MBL had failed to demonstrate the existence of a triable issue of material fact on the issue of its entitlement to independent, rather than appointed, counsel.

---

[5] On July 7, 2009, the trial court issued a supplemental order in favor of Atlantic and Centennial clarifying that it was granting those insurers' alternative motion for summary judgment on MBL's cross-complaint.

The Insurers subsequently dismissed, without prejudice, their second cause of action[6] and judgment was entered in their favor on or about October 6, 2010. MBL timely appealed.

F.    *Great American's motions for summary judgment and summary adjudication in case No. H036578*

On August 26, 2009, Great American brought a motion for summary adjudication against the other Insurers, seeking (1) a judicial declaration that the other Insurers owed ongoing defense obligations while the independent counsel dispute remained unsettled, and (2) a ruling that Great American was entitled to equitable contribution from the other Insurers for past amounts Great American had paid for MBL's defense. The trial court denied Great American's motion because, "[b]ased on this court's prior ruling of June 18, 2009, [the co-insurers] had no obligation to pay for independent counsel." Consequently, Great American was not entitled to equitable contribution " 'where there is no common obligation that is legally due from multiple insurers.' "

After amending its complaint to add a cause of action for reimbursement against MBL, Great American filed a motion for summary adjudication and summary judgment against MBL. The motion further sought summary judgment on MBL's cross-complaint against Great American. The trial court granted Great American's motion in its entirety and entered a declaratory and money judgment on October 27, 2010, in favor of Great American and against MBL.

Great American and the other Insurers stipulated to a form of judgment based on the court's December 2, 2009 order denying Great American's motion for summary adjudication on the issue of equitable contribution so that the issue could proceed to

---

[6] The second cause of action sought declaratory relief regarding MBL's alleged failure to cooperate with the Insurers, as required by the various policies.

10

appeal.  Pursuant to that stipulation, the trial court entered judgment against Great American and in favor of the other Insurers, and Great American timely appealed.[7]

## II.   DISCUSSION

### A.   Standard of Review

In order to prevail on a motion for summary judgment, a defendant must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense to that cause of action.  (Code Civ. Proc., § 437c, subd. (p)(2).)  "A court may grant summary judgment only when the evidence in support of the moving party establishes that there is no issue of fact to be tried."  (*Neighbarger v. Irwin Industries*, *Inc*. (1994) 8 Cal.4th 532, 547.)  In other words, summary judgment should be granted only when a moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)

On an appeal from summary judgment, we review the record de novo.  (See *Guz v. Bechtel National*, *Inc*. (2000) 24 Cal.4th 317, 334.)  "We need not defer to the trial court and are not bound by the reasons for [its] summary judgment ruling; we review the ruling of the trial court, not its rationale."  (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 85.)  In so doing we apply the same three-step analysis the trial court applies.  "First, we identify the issues framed by the pleadings.  Next, we determine whether the moving party has established facts justifying judgment in its favor.  Finally, if the moving party has carried its initial burden, we decide whether the opposing party has demonstrated the existence of a triable, material fact issue."  (*Chavez v. Carpenter* (2001) 91 Cal.App.4th 1433, 1438.)

---

[7] After denying the parties' joint motion to consolidate the appeals in case Nos. H036296 and H036578, this court granted its own motion to consider those cases together for briefing, oral argument and decision by order dated May 6, 2011.

11

*B.      Entitlement to independent counsel--statutory and case law*

In *San Diego Federal Credit Union v. Cumis Ins. Society, Inc.*, *supra*, 162 Cal.App.3d 358, the court held that if a conflict of interest exists between an insurer and its insured, based on possible noncoverage under the insurance policy, the insured is entitled to retain its own independent counsel at the insurer's expense.  (*Id.* at p. 364.)

The *Cumis* opinion was codified in 1987 by the enactment of section 2860, which " 'clarifies and limits' " the rights and responsibilities of insurer and insured as set forth in *Cumis*.  (*Buss*, *supra*, 16 Cal.4th at p. 59; *San Gabriel Valley Water Co. v. Hartford Accident & Indemnity Co.* (2000) 82 Cal.App.4th 1230, 1234.)  Section 2860 provides, in pertinent part:  "(a) If the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured . . . . [¶] (b) For purposes of this section, a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage; however, when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist.  No conflict of interest shall be deemed to exist as to allegations of punitive damages or be deemed to exist solely because an insured is sued for an amount in excess of the insurance policy limits."

"As statutory and case law make clear, not every conflict of interest triggers an obligation on the part of the insurer to provide the insured with independent counsel at the insurer's expense.  For example, the mere fact the insurer disputes coverage does not entitle the insured to *Cumis* counsel; nor does the fact the complaint seeks punitive damages or damages in excess of policy limits.  (Civ. Code, § 2860, subd. (b); [citations].)  The insurer owes no duty to provide independent counsel in these situations because the *Cumis* rule is not based on insurance law but on the ethical duty of an

12

attorney to avoid representing conflicting interests." (*Golden Eagle Ins. Co. v. Foremost Ins. Co.* (1993) 20 Cal.App.4th 1372, 1394.) For independent counsel to be required, the conflict of interest must be "significant, not merely theoretical, actual, not merely potential." (*Dynamic Concepts, Inc. v. Truck Ins. Exchange* (1998) 61 Cal.App.4th 999, 1007 (*Dynamic Concepts*).) The insured's right to independent counsel "depends upon the nature of the coverage issue, as it relates to the issues in the underlying case." (*Blanchard v. State Farm Fire & Casualty Co.* (1991) 2 Cal.App.4th 345, 350 (*Blanchard*).) "[W]here the reservation of rights is based on coverage issues which have nothing to do with the issues being litigated in the underlying action, there is no conflict of interest requiring independent counsel." (*Foremost Ins. Co. v. Wilks* (1988) 206 Cal.App.3d 251, 261.)

As we explained in the last paragraph, not every conflict of interest entitles an insured to insurer-paid independent counsel. Nor does "every reservation of rights entitles an insured to select *Cumis* counsel. There is no such entitlement, for example, where the coverage issue is independent of, or extrinsic to, the issues in the underlying action [citation] or where the damages are only partially covered by the policy." (*Dynamic Concepts, supra,* 61 Cal.App.4th at p. 1006.) However, independent counsel is required where there is a reservation of rights "*and* the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim." (§ 2860, subd. (b), italics added; *Blanchard, supra,* 2 Cal.App.4th at p. 350.)

### C.    MBL's Contentions

MBL argues the trial court erred in failing to analyze whether appointed defense counsel could have controlled the outcome of specific coverage issues raised in the insurers' reservations of rights letters. The duty to appoint independent counsel is not triggered at the moment defense counsel makes a tactical decision giving rise to a conflict. Instead, the parties' respective interests must be analyzed to determine if they can be reconciled or if there is a conflict of interest which puts appointed counsel in the

13

position of having to choose which master to serve. MBL contends that the policies underlying section 2860 and *Cumis* are not served in this case without requiring the Insurers to allow MBL to name independent counsel.

In support of its arguments, MBL cites the following language from *Golden Eagle Ins. Co. v. Foremost Ins. Co.*, *supra*, 20 Cal.App.4th 1372, "Attorney control of the outcome of a coverage dispute is written into . . . section 2860, subdivision (b) as an example of a conflict of interest which may require appointment of independent counsel. It is not, however, the only circumstance in which *Cumis* counsel may be required. The language of . . . section 2860 'does not preclude judicial determination of conflict of interest and duty to provide independent counsel such as was accomplished in *Cumis* so long as that determination is consistent with the section.' " (*Id*. at pp. 1395-1396.)

MBL takes the position that, under *Gafcon, Inc. v. Ponsor & Associates* (2002) 98 Cal.App.4th 1388, the Insurers had to prove that appointed counsel could not impact coverage by the manner in which they defended the case in order to prevail on summary judgment. (*Id*. at p. 1423.) The Insurers' motions ignored the fact that, to establish MBL's liability in the *Lyon* action, the third party claimants would attempt to show a connection between a discharge of pollutants, MBL's conduct and contamination leading to recovery of response/clean-up costs. The various factual positions favorable to the Insurers in relation to these issues are positions directly opposite to those favorable to MBL.

MBL also argues that the Insurers' reservations of rights to deny coverage for damages outside their particular policy periods triggered the obligation to provide independent counsel. Thus, MBL and the Insurers had diverging interests with respect to the timing of any environmental damages. The Insurers are interested in establishing that damages took place outside their respective policy periods and MBL is interested in establishing that any such damages occurred within those periods.

14

Finally, MBL claims the trial court erred in finding that a general reservation of rights cannot create a conflict of interest such as to trigger the obligation to appoint independent counsel.  If that were the case, insurers could always preserve all their coverage rights without having to appoint independent counsel.  In any event, these general reservations of rights amount to a surreptitious reservation of the right to deny coverage for damage that was expected or intended by MBL.

We examine each of MBL's contentions in turn.

### 1. *Conflict of interest created by pollution exclusions*

#### a. *Federal and Utica's qualified pollution exclusions*

According to MBL, the qualified pollution exclusions contained in Utica's and Federal's policies generally exclude coverage for property damage arising out of discharges of pollutants, but provide coverage if those discharges were "sudden and accidental" as defined by the policies.  Consequently, this type of exclusion creates a conflict of interest since the appointed counsel would have an interest in developing facts establishing that any discharge of pollutants by MBL was neither sudden nor accidental.

The problem with MBL's claim is that neither Federal nor Utica reserved their rights to decline coverage under the qualified pollution exclusions set forth in their policies.  Where the insurer has not expressly reserved its right to deny coverage under a particular exclusion in its policy, there can be no actual conflict based on the application of that exclusion during the pendency of the action.  (*Dynamic Concepts*, *supra*, 61 Cal.App.4th at p. 1010, fn. 10.)  MBL's argument that Federal and Utica, by way of including a *general* reservation of rights in their letters, somehow incorporated *specific* reservations of rights on their respective qualified pollution exclusions is unavailing.  A general reservation of rights does not give rise to a conflict of interest or create a duty to provide independent counsel.  (*Ibid.*)

15

### b. *Nationwide's absolute pollution exclusion*

MBL contends that because the *Lyon* action involves an underlying claim by the federal government against various third parties to remediate the polluted soil and groundwater, MBL and Nationwide have a diverging interest in establishing whether or not MBL's liability arose out of government directives or requests. By reserving its right to deny coverage based on this exclusion, Nationwide was obligated to provide independent counsel to MBL.

Nationwide responds that its reservation of the right to deny coverage under the absolute pollution exclusion does not create the right to independent counsel because appointed counsel cannot influence the outcome of that coverage issue. The underlying actions arise out of pollution and seek indemnity and contribution from MBL for clean-up costs related to soil and groundwater contamination. Whether the absolute pollution exclusion bars a claim arising out of MBL's activities is not an issue that would be litigated in the underlying actions. Counsel cannot influence the outcome of this coverage issue, which is strictly a matter of contract interpretation. Either the loss arose out of a government claim to remediate pollution or it did not, and there is nothing which counsel, whether retained or independent, could do to change the answer to that question.

We agree that Nationwide's reservation of rights under its absolute pollution exclusion did not create a conflict of interest which entitled MBL to independent counsel. The third party complaints seek contribution from MBL, among other potentially responsible parties, for the costs of remediating the soil and groundwater contamination which was traced back to Halford's, which MBL supplied with PCE and other chemicals over the years. MBL has not shown how Nationwide's reservation of rights to deny coverage for losses arising out of a government demand to monitor and clean up such pollution gives rise to a conflict of interest, since counsel could not control the outcome of that inquiry.

16

### 2. *Number of accidents or occurrences*

According to MBL, Nationwide's policy provides a specified limit for each "accident" or "occurrence." Thus it would be in Nationwide's interest to show that MBL's liability arose out of only one accident or occurrence and thus only one policy limit would apply, whereas it would be in MBL's interest to show that there were multiple accidents or occurrences, thus triggering multiple policy limits. The Insurers' reservation of rights on this issue triggers MBL's right to independent counsel.

Nationwide counters that it did not reserve its rights concerning the number of occurrences, consequently there can be no conflict of interest on this issue. In addition, the number of occurrences was not at issue in the *Lyon* action. MBL did not present any evidence to establish that the number of occurrences was litigated below or was in any way relevant to the claims in the *Lyon* action.

Again, we find that MBL cannot manufacture a conflict of interest by claiming a particular right was reserved by an insurer when, in fact, no such right was reserved. Nationwide's reservation of rights letter did not reserve the right to assert that the loss arose out of one occurrence. Without an express reservation of a right under the policy, there can be no conflict of interest based on the application of that exclusion or policy term during the pendency of the action. (*Dynamic Concepts*, *supra*, 61 Cal.App.4th at p. 1010, fn. 10.)

### 3. *Defense of parties adverse to MBL*

MBL contends that it was entitled to independent counsel because Federal, Nationwide and Great American defended and insured various third parties in the *Lyon* action who were adverse to MBL. Specifically, Federal defended and insured Bowe Permac, Inc., a third-party defendant in the *Lyon* action. Nationwide defended and insured McGraw-Edison, a third-party defendant in the *Lyon* action as well as a third-party cross-defendant in a cross-complaint filed by MBL. Great American insured and paid for the defense of the City of Modesto, a third-party defendant in the *Lyon* action

17

and a cross-defendant in MBL's third-party cross-complaint. In its discovery responses, Nationwide even admitted that the same claims analyst not only adjusted the claims for both MBL and McGraw-Edison, but was also privy to all communications from counsel for McGraw-Edison.

Federal contends that MBL's argument was not raised in response to their summary adjudication motion on their cause of action for declaratory relief on the duty to provide independent counsel, but was only raised when Federal, Utica and Nationwide subsequently moved for summary judgment on MBL's cross-complaint. Thus, it should not be considered on appeal.

Even if this argument is properly raised on appeal, Federal did not, as MBL claims, insure both sides of the litigation. It did not insure the property owners or the owners of the dry cleaning facility at issue, the third-party plaintiffs in the *Lyon* action. Merely because Federal may have represented another third-party defendant in that action does not per se mean that there was a conflict of interest which entitled MBL to independent counsel.

Furthermore, Federal retained different law firms to defend MBL and the other insured as well as assigned different claims adjusters to the files. These claims adjusters had no access to each others' files, did not discuss the claims and there is no evidence that the defense of either insured would have been affected in any way.

Nationwide argues that there was no conflict even though it insured one of the parties against which MBL brought a cross-claim for contribution. Nationwide agreed to defend that party under a reservation of rights and provided separate counsel. Nationwide's agreement to defend MBL under a reservation of rights does not obligate Nationwide to cover the costs incurred by MBL in asserting affirmative claims against other parties. Furthermore, there is no evidence of any adversarial litigation activity between MBL and McGraw-Edison that could have created a conflict of interest for defense counsel retained by the insurers.

18

Great American claims that MBL failed to show that it controlled the defense of the other insured; rather, the record reflected that different counsel represented the City of Modesto in the *Lyon* action and Great American assigned different claims adjusters to the separate insureds.

We agree with the Insurers. MBL failed to present evidence below to show that the Insurers' representation of other parties in the *Lyon* action gave rise to a "significant, not merely theoretical, actual, not merely potential" conflict of interest. (*Dynamic Concepts*, *supra*, 61 Cal.App.4th at p. 1007.) MBL's reliance on *O'Morrow v. Borad* (1946) 27 Cal.2d 794 to support its arguments on this issue is misplaced. *O'Morrow* arose out of an automobile accident involving two vehicles and the drivers of those vehicles happened to both be insured by the same insurance company. The insureds were thus direct adversaries in the litigation. However, that at the time *O'Morrow* was decided, contributory negligence was a complete bar to recovery. If each driver was shown to be at least partly to blame for the collision, the insurer would pay nothing to either of them. Since *O'Morrow* was decided, we have moved to a system of comparative negligence, in which responsibility for the loss is apportioned between and among wrongdoers based on the degree of their respective fault.

In this case, the Insurers could only avoid liability by establishing that a particular insured had no responsibility for the pollution at issue, not that each of its insureds was partially responsible for the loss. Ultimately, the Insurers would potentially have to indemnify all of their respective insureds against any judgment that might be entered and thus would have no incentive to shift liability among them.

### 4. *Exclusion of damages outside the policy periods*

MBL asserts that the Insurers' reservation of the right to deny coverage for damages occurring outside their various policy periods gave rise to a conflict of interest. Those reservations created a divergent interest in establishing the timing of any potentially covered losses.

We think it is clear where the coverage issue in question relates only to the timing of damages, there is no conflict under section 2860. (*Blanchard*, *supra*, 2 Cal.App.4th at p. 350.) As the court explained in a similar situation in *Blanchard*, "Insurance counsel had no incentive to attach liability to appellant. Respondent recognized its liability for certain damages flowing from appellant's liability; thus it was to the advantage of both appellant and respondent to minimize appellant's underlying liability." (*Ibid*.)

Here, as in *Blanchard*, it is in the interest of both the Insurers and MBL to defeat liability. MBL provided no evidence to establish how defense counsel could have controlled the issue of *when* certain damages occurred. Defense counsel could not control the facts at issue below, such as when MBL delivered solvents to the dry cleaning facility, or when the seepages and resulting environmental contamination occurred. Furthermore, the point in time the alleged damages occurred would not be relevant to defense counsel jointly retained by multiple insurers, who together issued policies providing coverage to MBL over a period of approximately 20 years.

### 5. *General reservations of rights*

To the extent MBL contends the Insurers' general reservations of rights gave rise to a conflict of interest, we reject that argument. General reservations are just that: general reservations. At most, they create a theoretical, potential conflict of interest-- nothing more. (*Dynamic Concepts*, *supra*, 61 Cal.App.4th at p. 1010, fn. 10.)

### 6. *Conclusion*

MBL failed to present evidence demonstrating a triable issue of material fact on the question of whether there exists a conflict of interest under section 2860. Consequently, we find the trial court did not err in granting the Insurers' motions and entering judgment in their favor.

D.    *Great American's appeal in case No. H036578*

Because we have decided that judgment was properly entered in favor of the other Insurers, the trial court also properly entered judgment in favor of the other Insurers on Great American's declaratory relief action.

At the heart of this dispute is the question whether MBL was entitled to independent counsel; since it was not, the other Insurers were not obligated to contribute to payment of MBL's counsel and Great American is not entitled to equitable contribution from the other Insurers.

Equitable contribution is a loss-sharing mechanism intended to accomplish ultimate justice among coinsurers of the same insured. (*Signal Companies, Inc. v. Harbor Ins. Co.* (1980) 27 Cal.3d 359, 369.) "Contribution among insurers is permitted where one insurer pays a loss or defends a claim for which another insurer shares responsibility." (*Maryland Casualty Co. v. Nationwide Ins. Co.* (1998) 65 Cal.App.4th 21, 26.) "Equitable contribution permits reimbursement to the insurer that paid on the loss for the excess it paid over its proportionate share of the obligation, on the theory that the debt it paid was *equally* and *concurrently* owed by the other insurers and should be shared by them pro rata in proportion to their respective coverage of the risk." (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1293 (*Fireman's Fund*).)

The fundamental prerequisite to equitable contribution is shared responsibility for the loss. Equitable contribution "is predicated on the commonsense principle that where multiple insurers or indemnitors share equal contractual liability for the primary indemnification of a loss or the discharge of an obligation, the selection of which indemnitor is to bear the loss should not be left to the often arbitrary choice of the loss claimant, and no indemnitor should have any incentive to avoid paying a just claim in the hope the claimant will obtain full payment from another coindemnitor." (*Fireman's Fund, supra*, 65 Cal.App.4th at p. 1295.) "The idea is that the insurers are 'equally

21

bound,' so therefore they 'all should contribute to the payment.' " (*Herrick Corp. v. Canadian Ins. Co.* (1994) 29 Cal.App.4th 753, 759.) Thus "[e]quitable contribution . . . applies to apportion costs among insurers that share the same level of liability on the same risk as to the same insured." (*Maryland Casualty Co. v. Nationwide Mutual Ins. Co.* (2000) 81 Cal.App.4th 1082, 1089.)

Under California law, an insurer "must defend a suit which *potentially* seeks damages within the coverage of the policy." (*Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275.) Where a potential for coverage exits, the duty to defend arises *immediately* upon tender of the underlying suit in order "to afford the insured what it is entitled to: the full protection of a defense on its behalf." (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 295; see also *Buss*, *supra*, 16 Cal.4th at p. 49.)

Once it attaches, the duty to defend continues until the conclusion of the underlying action, "unless the insurer sooner proves, by facts subsequently developed, that the potential for coverage which previously appeared cannot possibly materialize, or no longer exists." (*Scottsdale Ins. Co. v. MV Transportation* (2005) 36 Cal.4th 643, 657.) To put it another way, "the duty to defend begins when a potential for coverage arises, and the duty continues until the insurer proves otherwise." (*Hartford Accident & Indemnity Co. v. Superior Court* (1994) 23 Cal.App.4th 1774, 1781 [primary insurer obligated to defend until it obtained a judicial declaration relieving it of defense obligation]; *Maryland Casualty Co. v. National American Ins. Co.* (1996) 48 Cal.App.4th 1822, 1833 [defending insurer entitled to equitable contribution until nondefending insurer successfully proves defense against insured].)

In this case, none of the Insurers disputed their duty to defend MBL. They all acknowledged that duty and agreed to defend MBL, subject to their reservations of various rights. MBL, however, insisted on retaining independent counsel, rather than allowing counsel appointed by the Insurers to conduct its defense. As discussed above, MBL was not entitled to independent counsel, thus none of the Insurers (including Great

American) were ever obligated to reimburse MBL for the fees generated by that counsel. Great American, as it happens, did reimburse MBL for those fees, but because there was no obligation to pay, Great American can only seek reimbursement for those fees from MBL, not the other Insurers.

## III.   DISPOSITION

The judgments at issue in H036296 are affirmed.  The Insurers are entitled to their costs in connection with that appeal.

The appeal from the judgment in H036578 is dismissed as moot.  The parties are to bear their own costs in connection with that appeal.


_____
                                                    Premo, J.


WE CONCUR:


_____
        Rushing, P.J.


_____
        Elia, J.


Federal Insurance Company et al. v. MBL, Inc.
H036296
Great American Insurance Company v. Federal Insurance Company et al.
H036578

23

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court Superior Court Nos. CV114309, CV119165 |
| Trial Judge: | Hon. Mark H. Pierce |
| Counsel for Defendant/Appellant: MBL, Inc. **Case No. H036296** | Hamrick & Evans A. Raymond Hamrick III James M. Pazos Kenneth A. Kotarski |
| Counsel for Plaintiff/Respondent: Nationwide Indemnity Co. **Case No. H036296** | Barber Law Group Bryan M. Barber Steven D. Meier |
| Counsel for Plaintiff/Respondent: Federal Insurance Co. and Utica Mutual Insurance Co. **Case No. H036296** | Chamberlin Keaster & Brockman Kirk C. Chamberlin Elizabeth M. Brockman |
| Counsel for Plaintiff/Cross-defendant/Respondent: Great American Insurance Company **Case No. H036296** | Duane Morris Paul J. Killion Dominica C. Anderson Michael J. Dickman |

| | |
|---|---|
| Counsel for Plaintiff/Appellant: Great American Insurance Co. **Case No. H036578** | Duane Morris Paul J. Killion Dominica C. Anderson Michael J. Dickman |
| Counsel for Defendant/Respondent: Nationwide Indemnity Co. **Case No. H036578** | Barber Law Group Bryan M. Barber Steven D. Meier |
| Counsel for Defendant/Respondent: Federal Insurance Co. and Utica Mutual Insurance Co. **Case No. H036578** | Chamberlin Keaster & Brockman Kirk C. Chamberlin Elizabeth M. Brockman |

Federal Insurance Company et al. v. MBL, Inc.
H036296
Great American Insurance Company v. Federal Insurance Company et al.
H036578