# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 10, 2021

Lyle W. Cayce
Clerk

No. 20-10268

HALL CA-NV, L.L.C.,

*Plaintiff—Appellant*,

*versus*

OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:18-CV-380

Before CLEMENT, HO, and DUNCAN, *Circuit Judges*.
JAMES C. HO, *Circuit Judge*:

Imagine a seller who typically offers two services, A and B. Now imagine that this seller tells a particular buyer that he is interested in selling him only service A—and not service B. The buyer agrees to these terms. But later, when it turns out that the buyer would have benefited from purchasing service B, the buyer turns around and claims that in purchasing service A, he actually purchased service B as well. The buyer then sues the seller for refusing to provide him with service B.

No. 20-10268

You might think that it takes real chutzpah to bring that suit (and this appeal). And you would be right. Yet that is precisely what this suit presents.

Plaintiff Hall CA-NV, LLC (Hall) purchased title insurance from Defendant Old Republic National Title Insurance Company (Old Republic). The parties contracted using standard title insurance policy forms designed by the American Land Title Association (ALTA).

During that contracting process, Hall agreed to the removal of Covered Risk 11(a), the standard protection against losses from mechanic's liens arising out of work begun on or before the policy date. Hall even expressly agreed to a separate, much more limited mechanic's lien provision. Yet Hall now asserts that *other* contractual provisions—namely, Covered Risks 2 and 10—do just the work that Covered Risk 11(a) would have done.

Old Republic understandably resists Hall's *post hoc* attempt to shoehorn Covered Risk 11(a) into another provision of the contract. It points out that Hall's interpretation of Covered Risks 2 and 10 would render Covered Risk 11(a) surplusage—and the parties' decision to remove and replace Covered Risk 11(a) meaningless.

Curiously, Hall's reply brief does not even deign to respond. What's more, at oral argument, Hall's counsel was unable to identify a single scenario that would trigger coverage under Covered Risk 11(a) that would not also trigger coverage under its overbroad reading of Covered Risks 2 and 10.

Needless to say, these are not the hallmarks of a worthy interpretive theory or persuasive appellate strategy. And it suggests that this is nothing more than a case of buyer's remorse. We affirm.

No. 20-10268

## I.

Hall was one of the major funders behind a recent renovation of the (in)famous Cal-Neva Lodge & Casino, a resort straddling the California-Nevada border near Lake Tahoe.[1]

Before Hall agreed to finance the project, the owner of the property, New Cal-Neva Lodge, LLC (New Cal-Neva), had a general contractor, PENTA Building Group (Penta), conduct some preliminary work. Accordingly, Hall had Penta agree in writing to subordinate any lien that Penta might ever assert in favor of Hall. Only then did Hall agree to fund the project. Hall initially authorized up to $29 million in debt financing in exchange for a mortgage on the property.

At the same time, Hall obtained both California and Nevada title insurance policies from Old Republic. In so doing, Hall agreed to remove the standard ALTA forms' Covered Risk 11(a). That provision typically protects the insured against any "loss or damage . . . sustained or incurred  . . . by reason of . . . [t]he lack of priority of the lien of the Insured Mortgage . . . over any statutory lien for services, labor, or material arising from construction of an improvement or work related to the Land when the improvement or work is . . . contracted for or commenced on or before Date of Policy."

The project continued, but the loan became out of balance in the wake of significant change orders. Hall eventually stopped advancing funds after

---

[1] The Cal-Neva Lodge—once owned by Frank Sinatra, Dean Martin, and (allegedly) Chicago mob boss Sam Giancana, among others—has long been the subject of controversy. The rumors have involved everything from Prohibition-era tunnels to arson. *See*, *e.g.*, Katie Dowd, *Mobsters, Marilyn and Sinatra: The legendary Cal Neva Lodge is preparing for guests again*, SFGate (Oct. 18, 2019), https://www.sfgate.com/sfhistory/article/history-larry-ellison-Cal-Neva-Lodge-14496588.php.

New Cal-Neva failed to obtain additional equity. However, Penta continued its work for some months thereafter.

Finding itself unpaid, Penta filed and began foreclosing on mechanic's liens, claiming in California and Nevada state courts that its liens had priority because they related back to Penta's initial work (performed before Hall provided funding for the project). Old Republic hired Kolesar & Leatham, P.C. (K&L) to defend both Hall and another lender, Ladera, jointly against the Penta claims—rather than provide separate counsel. The cases were removed to federal bankruptcy court, where the parties eventually settled. Old Republic agreed that it would not invoke Hall's settlement to deny any claim for indemnity, and the property sold in 2018 for $38 million. When all was said and done, Hall was left with a loss of approximately $4.9 million.

Hall then filed various contract, statutory, and common-law claims against Old Republic in federal district court for failing to indemnify Hall under its title insurance policies.

The district court concluded that, although the "unpaid Penta pre-policy-date work" is a "defect" under Covered Risk 2 and an "encumbrance" under Covered Risk 10, coverage is precluded by Exclusions 3(a) and 3(d), which bar claims "for liens and work performed after the policy date." The court found that Hall had "not raised a genuine dispute of material fact that [Penta's] liens were for unpaid work before the policy date," and accordingly granted Old Republic's motion for summary judgment and denied Hall's motion for partial summary judgment. Hall appeals.

## II.

"A district court 'shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hassen v. Ruston La. Hosp. Co.,*

932 F.3d 353, 355 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). "We review a grant of summary judgment de novo, applying the same standard as the district court. But we view the evidence and draw all justifiable inferences in favor of the nonmovant." *Id.* (citations omitted).

According to Hall, the district court erred in granting Old Republic's motion for summary judgment on Hall's contract claims because Exclusions 3(a) and 3(d) do not relieve Old Republic of its duty to cover the Penta lien losses. But as Old Republic correctly notes, the threshold question is whether the policies' insuring clauses cover the claimed losses in the first place.

Hall contends that the Penta lien losses are insured under Covered Risks 2 and 10. Those provisions state that Old Republic "insures as of Date of Policy" against losses "sustained or incurred . . . by reason of . . . [a]ny defect in or lien or encumbrance on the Title" or "[t]he lack of priority of the lien of the Insured Mortgage upon the Title over any other lien or encumbrance."

Specifically, Hall argues that, because the Penta liens "relate back" to the preliminary work Penta conducted prior to the Hall mortgage, the liens actually existed (at least in some qualifying, inchoate form) at the time the policies went into effect—"as of Date of Policy." *See*, *e.g.*, CAL. CIV. CODE § 8450 (providing that, under certain conditions, a mechanic's lien "has priority over a lien, mortgage, deed of trust, or other encumbrance on the work of improvement or the real property on which the work of improvement is situated"); *J.E. Dunn Nw., Inc. v. Corus Constr. Venture, LLC*, 249 P.3d 501, 504 & n.2 (Nev. 2011) (explaining that "all mechanics' liens relate back to the date overall construction commenced" and "ha[ve]

priority over a deed of trust recorded after the commencement of construction").[2]

However, any doubt about whether Covered Risks 2 and 10 could possibly be read to cover the Penta lien losses at issue here is removed by the fact that the parties also signed standard ALTA Form 32-06.  In so doing, the parties specifically contracted to eliminate one coverage provision of the standard-form insurance policy—Covered Risk 11(a).  As noted, that provision usually protects the insured against any loss incurred as a result of "[t]he lack of priority of the lien of the Insured Mortgage . . . *over any statutory lien for services, labor, or material* arising from construction of an improvement or work related to the Land *when the improvement or work is . . . contracted for or commenced on or before Date of Policy*."

In other words, the parties took a standard-form ALTA contract and used a standard-form addendum to specifically remove the provision that would have unquestionably provided Hall coverage in this exact scenario.  This fact alone should doom Hall's claim that the remaining provisions of the insurance policies somehow cover the Penta lien losses.  As Old Republic points out, reading Covered Risks 2 and 10 to cover a loss specifically covered by the (removed) Covered Risk 11(a) would render Covered Risk 11(a) in the

---

[2] It is far from clear that the Penta liens existed "as of Date of Policy" under California and Nevada law.  *See, e.g.*, *Picerne Constr. Corp. v. Castellino Villas*, 199 Cal. Rptr. 3d 257, 263 (Ct. App. 2016) ("In order to have a *valid* mechanic's lien, a claimant *must* record a claim of lien within a prescribed period of time . . . . *Once recorded*, a claim of mechanic's lien constitutes a direct lien on the improvement and the real property.") (emphases added) (citations omitted); NEV. REV. STAT. § 108.226 ("To perfect a lien, a lien claimant must record a notice of lien in the office of the county recorder of the county where the property . . . is located.").  At a minimum, it is dubious that a mechanic's lien (even an inchoate one) could have existed before Penta (a) *continued* to work on the project *and* (b) was left unpaid for that work.  This was not a situation where, "as of Date of Policy," there was "an inchoate lien where the only remaining act was the filing of the lien."

standard-form ALTA contract surplusage. This would contravene both California and Nevada contract principles. *See* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."); *Musser v. Bank of Am.*, 964 P.2d 51, 54 (Nev. 1998) ("[C]ontracts should be construed so as to avoid rendering portions of them superfluous."). *See also Fed. Ins. Co. v. Coast Converters, Inc.*, 339 P.3d 1281, 1285 (Nev. 2014) ("This court will not . . . increase an obligation to the insured where such was intentionally and unambiguously limited by the parties.") (quotations omitted).[3]

Oddly, Hall does not even respond to this surplusage argument in its reply. And at oral argument, Hall all but conceded that Covered Risk 11(a) is superfluous, protesting only that "just because the parties chose to eliminate a more specific grant of coverage d[oes] not eliminate those broader provisions of coverage."

---

[3] The district court interpreted the insurance contract under Texas law, on the ground that Old Republic "failed . . . to meet its burden to prove a conflict" between Texas law on the one hand, and California and Nevada law on the other. But the insurance policies at issue have an express choice-of-law provision that dictates that "the court . . . shall apply the law of the jurisdiction where the Land is located . . . to interpret and enforce the terms of this policy." And absent extraordinary circumstances, "Texas will enforce a choice-of-law clause." *Western-Southern Life Assurance Co. v. Kaleh*, 879 F.3d 653, 658 (5th Cir. 2018). Accordingly, we apply California and Nevada contract law in determining whether Hall is entitled to indemnification under the terms of the policies. *See id.* (explaining that in a diversity action, we look to the "forum state" for the "choice-of-law principles necessary 'to determine which substantive law will apply'") (citation omitted).

In any event, Texas applies the same contract principles we apply in this case. *See In re Pirani*, 824 F.3d 483, 494 (5th Cir. 2016) (explaining that "[w]hen contractual provisions arguably conflict, Texas courts employ canons of construction as tools to harmonize them," including "the rules that . . . specific provisions control over general provisions . . . and . . . the interpretation of an agreement should not render any material terms meaningless").

In effect, Hall's argument amounts to this: The standard contract employs a "belt-and-suspenders" approach to insuring the type of mechanic's lien losses at issue here. So it should not matter if parties decide to ditch the belt (Covered Risk 11(a)), so long as they keep the suspenders (Covered Risks 2 and 10).

We cannot accept that argument. We are reluctant to say that the parties' alteration of a standard-form contract is meaningless. And we are especially loath to do so here, where the parties' alteration doesn't just "delete[]" Covered Risk 11(a)—it replaces the provision with substantially narrower coverage. The 32-06 endorsements here replaced the standard mechanic's lien coverage with more limited coverage, specifically cautioning that the policies "do[] *not* insure against loss or damage . . . by reason of *any Mechanic's Lien arising from services, labor, material, or equipment . . . not designated for payment* in the documents supporting a Construction Loan Advance disbursed . . . on or before Date of Coverage." (Emphases added.) In other words, Old Republic did what Hall argues it should have done—it "issue[d] a [(qualified)] mechanic's lien exception to the Policies." [4]

Finally, even assuming *arguendo* that the 32-06 endorsements and the Covered Risks conflict or result in an ambiguity about whether the Penta lien losses are covered, it is the more general provisions that suggest that there may be coverage (under Hall's theory), while the more specific provisions instruct that there is no such coverage. And of course it is a basic principle of contract interpretation, recognized in California and Nevada law alike, that the specific controls the general. *See Boghos v. Certain Underwriters at Lloyd's of London*, 115 P.3d 68, 73 (Cal. 2005) (explaining that when two contract

---

[4] Hall does not allege that the Penta liens arose from "services, labor, material, or equipment . . . designated for payment in the documents supporting a Construction Loan Advance disbursed . . . on or before Date of Coverage."

provisions are "truly inconsistent," "more specific contractual provisions control over more general ones"); *Shelton v. Shelton*, 78 P.3d 507, 510 (Nev. 2003) (explaining that when a contract is ambiguous, "a specific provision will qualify the meaning of a general provision").

In sum, the insuring clauses do not cover Hall's Penta lien losses. We therefore need not review the district court's conclusions regarding Exclusions 3(a) and 3(d) to affirm the judgment.

## III.

We likewise affirm the district court's grant of Old Republic's motion for summary judgment on Hall's bad-faith and Texas Insurance Code claims. As Hall is not entitled to indemnification for the Penta lien losses, Hall cannot show that Old Republic acted in bad faith in denying its claim. And as Hall alleges no other harm apart from the Penta lien losses, Hall cannot demonstrate that Old Republic caused it any harm in violating the Texas Insurance Code—assuming *arguendo* that the Texas Insurance Code applies, and that Old Republic ran afoul of its provisions. *See Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 172 (5th Cir. 2018) ("[Defendant's] counterclaims under the Texas Insurance Code are based on unpaid coverage benefits rather than some other, independent injury. Accordingly, [its] statutory claims fall with its breach of contract claim."); *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 500 (Tex. 2018) ("An insured cannot recover *any* damages based on an insurer's statutory violation unless the insured establishes a right to receive benefits under the policy or an injury independent of a right to benefits.").

## IV.

Finally, we affirm the district court's grant of Old Republic's motion for summary judgment on Hall's independent-counsel (or duty-to-defend) claim. Hall contends that the district court erred in holding that it failed to

present evidence of harm resulting from Old Republic's failure to provide Hall and Ladera with separate counsel. In so doing, Hall points to vague testimony from its corporate representative that Hall spent "[m]aybe a couple hundred thousand dollars[,] tops, something like that" "[d]oing things" that K&L would have done but for its dual obligations to Hall and Ladera. But the only concrete shortcoming Hall alleges on appeal is K&L's decision to leave the room during one mandatory mediated settlement meeting. Hall does not explain what actual conflict existed, or why K&L recused itself in that instance. That is insufficient under both California and Nevada law. *See Fed. Ins. Co. v. MBL, Inc.*, 160 Cal. Rptr. 3d 910, 920 (Ct. App. 2013) (explaining that "not every conflict of interest entitles an insured to insurer-paid independent counsel" because a "conflict of interest must be 'significant, not merely theoretical, actual, not merely potential'") (citation omitted); *State Farm Mut. Auto. Ins. Co. v. Hansen*, 357 P.3d 338, 343 (Nev. 2015) ("Courts must inquire, on a case-by-case basis, whether there is an actual conflict of interest . . . . [D]ual-representation is appropriate as long as there is 'no actual conflict.'") (citation omitted).

* * *

Hall agreed to remove one standard-form contract provision—one that would have insured against the precise misfortune it ultimately suffered—and replace it with a much narrower one. We will not stretch the remaining contract provisions to resurrect the more generous coverage. We affirm.